CASES ARGUED AND DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

OCTOBER TERM, 1925.

---

(*Continued from Vol. 312.*)

---

THE STATE ex rel. OMER E. BROWN, Petitioner, v.
FRED STEWART, Judge of Circuit Court.

Division Two, February 26, 1926.

1. **PROHIBITION: Motion to Strike Out Return: Reply.** A motion to strike out a portion of the return to a writ of prohibition on the ground that its allegations are conclusions of law and not of fact, may be overruled, where they are denied by the reply of relator.

2. **ELECTION CONTEST: Insufficient Notice: Appearance: Waiver: Jurisdiction.** The appearance of contestee in an election contest and the filing of a motion to dismiss, wherein it is stated that he appears therein only for the purpose of the motion and wherein it it is stated that "the notice of the contestant to the contestee herein, upon which the sheriff's return is indorsed, does not state facts sufficient to constitute grounds for an election contest, under the laws of this State, and wholly fails to state any cause of action," does not constitute a general appearance, and is not a waiver of the lack of jurisdiction of the court to proceed to hear the contest. The court has no jurisdiction of the subject-matter unless there is

(1)

a sufficient notice served in proper time. The notice must state facts constituting a cause of action, and if it fails to state a cause of action the court does not acquire jurisdiction of the contestee's person, and he does not waive jurisdiction by simply moving to dismiss on the ground that the notice is insufficient in failing to state a case for an election contest.

3. **RETURN: Amendment by Court.** While the trial court has a judicial discretion to cause the sheriff to amend his return, that discretion does not authorize the court to require the sheriff to amend his return contrary to the facts. Where the sheriff made search for defendant only at his residence on the day he had the papers in his hands, the court cannot command him to amend his return so as to show that the sheriff failed to find the defendant "in my said county" on subsequent days. And where the court has no authority to require the amendment to be made and the sheriff refuses to make it because it would be contrary to the facts, the sheriff's return is conclusive on the parties, and can be contradicted only in an action for making a false return.

4. **ELECTION CONTEST: Service of Notice: Premature Posting.** In an election contest, to authorize a posting of the notice in the office of the clerk, in an effort to serve process upon the contestee, the sheriff must retain the writ and use diligence to serve it during its entire life, that is, during the twenty days after the votes shall have been officially counted. If he makes a *non est inventus* return seven days before the expiration of the twenty days, a posting of the notice in the office of the clerk is not authorized and is not valid service.

5. ————: **Service of Notice: Premature Posting in Clerk's Office.** Service of process by posting in the clerk's office is service by publication, and statutes providing for service of process by publication, being in derogation of the common law, must be strictly pursued; and a *non est* return by the sheriff, if prematurely made before the return day, does not authorize service by publication, and premature publication, however otherwise regular, is not effective process. The statute (Sec. 4896, R. S. 1919) providing that notice of an election contest shall be given within twenty days after the vote shall have been officially counted "by delivering copy thereof to the contestee, or by leaving such copy at his usual place of abode, with some member of his family over the age of fifteen years; or if neither such contestee nor his family can be found, and service cannot therefore be had as aforesaid, it shall be a sufficient service of such notice for the contestant to post a copy thereof in the office of the clerk of the court wherein the contest is to be heard," means that service of process by posting will be effective

State ex rel. Brown v. Stewart.

only in case personal service cannot be had within the twenty days; and where the sheriff's return, made on the thirteenth day after the official count of the vote, recited that he made diligent search and failed to find the contestee, or any member of his family over the age of fifteen years at his usual place of abode, a posting of the copy of the notice in the office of the clerk on that day was premature and was not effective service, it matters not how long the notice remained posted.

6. ———: ———: ———: **Retroactive Effect of Premature Posting.** Where the sheriff made a *non est inventus* return on the thirteenth day after the official count of the vote and on that day the notice of the election contest was posted in the clerk's office, and between that day and the twentieth day he had no papers in his hand and no notice upon which to make a return, an effort to serve a copy of the notice on the twenty-first day and a *non est* return made on that day did not make valid and effective the otherwise premature and ineffective posting of the notice on the thirteenth day. If during the seven days intervening between the thirteenth and twentieth day he went nowhere in the county in search of the contestee and had no papers in his hands to serve, the effort to find the contestee on the twenty-first day and a *non est* return on that day had no such retroactive effect as to make valid the premature and invalid publication on the thirteenth day; and if he had no notice or papers in his possession to serve during the seven intervening days, or if no notice was posted in the office of the clerk after the twentieth day, there was no valid service. To authorize the posting of the notice to be served, the sheriff must retain the writ and use due diligence to serve it during its life, and he has no right to return it unexecuted before the end of twenty days, and a *non est* return before the return day is an illegal return.

7. **PROHIBITION: Election Contest: Invalid Service.** Where there was no valid service of the writ or notice in an election contest, and no such appearance by the contestee as amounted to a waiver of service, the circuit court does not obtain jurisdiction of the subject-matter, and a writ of prohibition will lie to prohibit the court from proceeding to hear the contest.

Appearances, 4 C. J., Section 5, p. 1320, n. 49; Section 32, p. 1340, n. 92. Elections, 20 C. J., Section 270, p. 210, n. 81; Section 276, p. 218, n. 73; Section 277, p. 218, n. 79 New; Section 278, p. 218, n. 87; p. 219, n. 88, 90. Process, 32 Cyc., p. 467, n. 25; p. 472, n. 71; p. 483, n. 74; p. 488, n. 9 New; p. 514, n. 15; p. 537, n. 46; p. 538, n. 48; p. 540, n. 76. **Prohibition,** 32 Cyc., p. 629, n. 96 New.

Prohibition.

Writ made absolute.

*Hamlin, Hamlin & Hamlin, Page & Barrett, Charles Boyd* and *Neale & Newman* for petitioner.

(1) The requirements of the statute as to notice are jurisdictional and must be strictly complied with. State ex rel. v. Hough, 193 Mo. 615; Castello v. Court, 28 Mo. 277; State ex rel. v. Spencer, 166 Mo. 279; 15 Cyc. 394-400; Higbee v. Ellison, 92 Mo. 13; Montgomery v. Dormer, 181 Mo. 5; State ex rel. v. Robbinson, 192 S. W. 103; State ex rel. v. Southern, 214 S. W. 100. An election contest is purely statutory, and a party to avail himself of it must bring himself within the statutory requirements. Chandler v. Railroad, 251 Mo. 592; Barker v. Railroad, 91 Mo. 86; McIntosh v. Railroad, 103 Mo. 131; Matthieson v. Railroad, 219 Mo. 542; State ex rel. v. Hough, 193 Mo. 643. Under our statutes, the notice takes the place of a petition and writ, and the service of the notice fills the office of a summons. Hale v. Stimson, 198 Mo. 145. Therefore a return made before the return day in an election contest is premature and void, the same as in a civil suit. State ex rel. v. Southern, 214 S. W. 100; Lumber Co. v. McCabe, 220 Mo. 169; Ex parte Nelson, 251 Mo. 167. A *non est* return prematurely made does not authorize substituted or constructive service. 32 Cyc. 472, 507; Cummings v. Brown, 181 Mo. 711; Dillion v. Rash, 27 Mo. 243; Marks v. Hardy, 86 Mo. 232. The attempted substituted or constructive service was prematurely made in this case and therefore is absolutely void. State ex rel. v. Robbinson, 192 S. W. 1003; State ex rel. v. Southern, 214 S. W. 100. (2) An officer cannot amend his return without leave of court. The attempted amendment to the sheriff's return of December 29th was not made with leave of court because the court was not in session. Therefore the attempted amendment of December 29th was null and void. Bauch v. Weber Flour Co., 238 S. W. 581; Jackson v. Weber Imp. Co., 247 S. W. 469. (3) The court's attempted amendment of the sheriff's return was without warrant of law, and is therefore void. The authority of the court over the sheriff's return in material matters

extends no further than to require the sheriff to make a full return, not a new or contradictory one. Flynn v. Kalamazoo, 101 N. W. 222; 21 R. C. L. 1330. The sheriff's return is conclusive as between the parties as to all matters within the knowledge of the sheriff, unless the falsity of the return is shown by some other part of the records. Goddard v. Harbox, 540 Am. St. 608. In Missouri the sheriff's return cannot be attacked by oral evidence. Stewart v. Stringer, 41 Mo. 404; Madison Co. v. Suman, 79 Mo. 531. The sheriff's return of process, regular on its face, is conclusive between the parties to a suit and its truth cannot be controverted in the suit in which it has been filed. Dellinger v. Higgins, 26 Mo. 180; 4 Cyc. 620. Where the sheriff's return is complete on its face he cannot be compelled to amend it, and the only remedy is on the sheriff's bond. 32 Cyc. 539; Dellinger v. Higgins, 26 Mo. 180; Hollowell v. Page, 24 Mo. 590. (4) Contestant's notices were insufficient to confer jurisdiction upon the court in the election contest. Hale v. Stimson, 198 Mo. 134; State ex rel. v. Southern, 214 S. W. 100. (5) The filing of a motion or answer attacking the notice, does not constitute a waiver, and does not confer jurisdiction on the court. State ex rel. v. Spencer, 164 Mo. 55, 166 Mo. 279; State ex rel. v. Robinson, 192 S. W. 1003; State ex rel. v. Southern, 244 S. W. 100.

*W. L. Vandeventer* and *Moore & Farrar* for respondent.

(1) The proper service was had on contestee by posting of the notice in the clerk's office. The fact that it was posted prematurely makes no difference if it stayed up, and an honest endeavor was made by the sheriff to locate contestee during the whole twenty days. Sec. 4896, R. S. 1919. (2) There are two ways of amending returns to conform with the facts. (a) The court may do so: Before final judgment. Sec. 1274, R. S. 1919; After judgment. Sec. 1277, R. S. 1919; At any time. Sec. 1287, R. S. 1919. (b) The court may require the sheriff to amend.

Sec. 1289, R. S. 1919. (3) Oral testimony is admissible so the facts may be ascertained and the amendment made to conform thereto. Jackson v. Brown, 211 S. W. 893; Feurt v. Caster, 174 Mo. 301; Judd v. Smoot, 93 Mo. App. 289; McGrew v. Foster, 54 Mo. 258; Scruggs v. Scruggs, 46 Mo. 271; Trust Co. v. Enright, 162 Mo. App. 158; Hopkins v. Henson, 205 Mo. App. 384. (4) It is the service of the notice, either actual or constructive, which gives the court jurisdiction. The return is merely the evidence by which the court ascertains the fact of service. Kahn v. Ins. Co., 228 Mo. 585. (5) The sheriff could make no amendment without leave of court. Sec. 1289, R. S. 1919; Bauch v. Weber Flour Mills, 210 Mo. App. 666; Kahn v. Ins. Co., 228 Mo. 585; Sibole v. McKinnies, 217 S. W. 577; Hopkins v. Henson, 205 Mo. App. 384. (6) The law gives the court jurisdiction of the subject-matter of an election contest. State v. Cave, 272 Mo. 653; Hope v. Blair, 105 Mo. 85; State ex rel. v. Spencer, 164 Mo. 48. (7) The service of notice gives jurisdiction of the person and this may be waived. State v. Cave, 272 Mo. 653; Fithian v. Monks, 43 Mo. 515; State ex rel. v. Smith, 104 Mo. 422; State ex rel. v. Neville, 110 Mo. 348; State ex. rel. v. Oliver, 163 Mo. 697; State ex rel. v. Spencer, 164 Mo. 48; State ex rel. v. McElhinney, 199 Mo. 67. (8) A demurrer to a petition is an entry of appearance and waiver of service. Calling it a "motion to quash" and a "motion to dismiss" does not change its character. These motions challenge the sufficiency of the petition, which is the province of a demurrer. Hill v. Barton, 194 Mo. App. 324; Newcomb v. Railroad, 182 Mo. 687; Davis v. Fleming, 253 S. W. 798; State v. Grimm, 239 Mo. 135.

WHITE, J.—The relator seeks by prohibition to restrain the respondent, Judge of the Circuit Court of Christian County, from proceeding further with an election contest wherein the relator is contestee, and G. Purd Hayes, is contestant.

Brown and Hayes were opposing candidates for prosecuting attorney of Christian County at the election held

November 4, 1924. The canvass of the vote showed that relator received 2109 votes, and contestant Hayes received 2096 votes. The canvassing board announced that relator was elected by a majority of thirteen votes.

The relator filed his petition here February 2, 1925, averring the facts in relation to the election and the count of the votes, and alleging that November 21, 1924, Hayes placed in the hands of the Sheriff of Christian County a copy of an alleged notice of intention to contest the election, on the same day posted in the office of the Clerk of the Circuit Court of Christian County a copy of said notice, and made return that, being unable after diligent search to find the contestee, Omer Brown, or any member of his family over the age of fifteen years, at his usual place of abode in Christian County, he so posted the notice; that later the sheriff filed an additional return certifying that on November 27th he received a paper which purported to be a copy of the notice and petition in the case of Hayes v. Brown; that he visited the residence of Brown and failed to find Brown, or any member of his family over the age of fifteen years, and November 28th visited the residence of Brown twice and failed to find any member of his family; that he had no papers in his possession from the time the first notice was posted until November 27th.

The petition then alleges that at the January term, 1925, of the Circuit Court of Christian County, the relator filed a motion to quash the alleged service upon him of the said notice, and on the same date filed a motion to dismiss the proceeding, both of which motions were by the judge of said court, the respondent, overruled; that the said court was entirely without jurisdiction, but the respondent assumed jurisdiction of the election contest and announced that he would proceed to hear and determine the same. The petition prays this court to issue a writ of prohibition, as stated.

A preliminary rule in prohibition was issued by this court February 17, 1925. The respondent thereafter filed an acceptance of service and filed a motion praying this

court to permit respondent to require the sheriff to amend his return to conform to the facts. This motion was by this court sustained, and thereafter. the respondent, on March 7, 1925, filed herein his return to the provisional writ, which among other things, recites that respondent ordered a recount of the votes involved in said contest, and on such recount found contestant elected by a majority of twenty-five, and while the contestee was served with notice upon the contestee, and upon such evidence ordered representation. To this return the petitioner filed a reply, joining issue on certain facts alleged therein. Thereafter, September 10, 1925, a stipulation was entered into between the relator and respondent setting up the facts in relation to a second amended return of the sheriff in the contest case. This shows that the respondent took evidence regarding the service or attempted service of the notice upon the contestee, and upon such evidence ordered the sheriff to make a second additional return, which the sheriff refused to sign.

It is claimed by the relator that no jurisdiction of the cause was acquired by respondent because the contestee was never legally served with notice of the contest. In this matter we have for consideration:

The first return of the sheriff made November 21, 1924;

The sheriff's additional return made November 29, 1924;

The second additional return which the respondent ordered the sheriff to make, and entered of record as and for his return, though he refused to sign it.

The evidence taken by the respondent after leave obtained from this court upon which evidence he ordered the second additional return.

The stipulation filed in this court.

It is from these we must determine whether the respondent acquired jurisdiction to proceed with the election contest.

The relator filed in this court a motion to strike out a portion of the return of the respondent, which motion

was taken with the case. The allegations asked to be stricken out are conclusions of law and not of fact, which may be good in a sheriff's return of service, but not in the respondent's return to this writ. Whether the allegations are relevant or otherwise is not important, because they are denied by the reply of the relator, and on the issue thus tendered the evidence was taken and the whole matter determined as a question of fact.

The motion may therefore be overruled.

I. It is first claimed by respondent that the relator waived any right to question the jurisdiction of the court by filing his motion to dismiss. The motion, stating that contestee appears for the purpose of the motion only, sets up several grounds why the service of notice was not had upon the contestee according to law, and contains this additional ground:

Appearance: Waiver.

"That the notice of the contestant to the contestee herein, upon which the sheriff's return is indorsed, does not state facts sufficient to constitute grounds for an election contest, under the laws of this State, and utterly and wholly fails to state any cause of action, under the laws of this State."

The respondent contends that this paragraph constitutes a general appearance, in that the attack is not limited to the mere lack of service of the notice, but questions the sufficiency of the notice as a cause of action. The contestee by appearing for the purpose of the motion only, claims there was no waiver of his right to question the jurisdiction of the court for the want of service upon him.

No doubt in an ordinary action, a motion which challenges the jurisdiction and at the same time attacks the petition as stating no cause of action, constitutes a general appearance. If the paragraph set out above can be construed as merely an attempt to question the sufficiency of the statement of contestant's case, it is a general appearance and a waiver of service. However, there are difficulties in the way of that construction. It is un-

iformly held that the statute relating to election contests is a code by itself and authorizes a proceeding unknown to the common law. [State ex rel. Hancock v. Spencer, 166 Mo. l. c. 285; State ex rel. v. Hough, 193 Mo. 643.]

The notice of an election contest as provided in Section 4896, Revised Statutes 1919, serves a double purpose (20 C. J. 218): It constitutes not only the petition setting forth the cause of action, but it serves the purpose of a writ.

LAMM, J., in Hale v. Stimson, 198 Mo. 134, explained the nature of the notice. He said (l. c. 145): "Under our method of contesting elections, the notice of contest takes the place of a petition in an ordinary suit, and the service of this notice upon the contestee fills the office of a summons in an ordinary suit." And further: "The notice of contest, therefore, must be judged by the rules pertaining to the sufficiency of the petition, and hence, must state a cause of action to give the court jurisdiction, or in order that a recount of votes may be legally made."

In support of that position he cites the Spencer case, 166 Mo. l. c. 279, l. c. 286, in which case it was held that the court never acquired jurisdiction because the notice of contest did not state sufficient grounds to warrant a recount. Among the cases cited by Judge LAMM in the Hale case, was Castello v. St. Louis Circuit Court, 28 Mo. 259, a leading case which is cited in many later cases. Castello contested the election of Cerre, who was returned elected Sheriff of St. Louis County. Castello gave Cerre what he supposed to be the notice of contest required by statute. The court determined that the notice was insufficient and dismissed the proceeding. Castello then filed in this court a petition for writ of mandamus to compel the trial court to proceed with the case. This court in considering the matter (l. c. 276) said: "As the contestant had not given the necessary notice, if the court, after having heard the objections to the notice, had gone on with the trial, and after receiving the whole evidence had been of the opinion that Castello had received the greater number of legal votes, yet if it had been of the

opinion that he had neglected to give the requisite notice, it would have been bound to have given judgment against him.''

This court, following those earlier cases, in the case of State ex rel. Woodson v. Robinson, 270 Mo. 212, went so far as to hold that a proper notice in an election contest, stating sufficient grounds for a recount, was necessary in order to give jurisdiction of the subject-matter, and a failure to give such notice could not be waived. In the later case of State ex rel. Newell v. Cave, 272 Mo. 653, this court by divided vote of four to three receded from that extreme position and held that an insufficient notice could be waived by the contestee, by appearing to the merits of the cause. The opinion written by Judge Woodson does not distinctly overrule the Robinson case, but distinguishes it, holding that a general appearance to an election contest waived jurisdiction of the person, and that the court had jurisdiction of the subject-matter. In that case the contestee filed a motion to strike out parts of the amended notice of contest without questioning the jurisdiction, and (l. c. 658), ''The contestee repeatedly entered his general appearance in the cause.'' He afterwards questioned the jurisdiction of the court and it was held he waived the lack of service of sufficient notice.

From these authorities we are compelled to this conclusion: in order to confer jurisdiction of the person there must be a sufficient notice served in proper time. That is, the notice must state facts which constitute a cause of action. If the notice fails to state a cause of action the court does not acquire jurisdiction of the person. Therefore, the contestee does not waive the want of jurisdiction by moving to dismiss on the ground that the notice is insufficient in failing to state a case for an election contest. The logic of that conclusion seems irresistible.

This was distinctly held by this court en banc in case of State ex rel. Bulger v. Southern, 278 Mo. l. c. 616, opinion by J. T. BLAIR, concurred in by all the court except WOODSON, J. There the contestee, appearing for the pur-

pose only, filed a motion to quash on the ground that the court was without jurisdiction for several reasons, among which was this: ". . . for the reason that the pretended notice of contest given by said contestant is based upon alleged objections to the qualifications of voters, and the names of none of said voters are stated in the said notice and the alleged objections are not specified." That specification in the motion has nothing to do with the service of the notice, but is directed at its sufficiency as the statement of a cause of action. It was claimed by the contestant that the lack of service of the notice was waived by that assignment in the motion. This was disposed of by the opinion (l. c. 620-621), the court citing the Castello case and other later cases mentioned above. It pointed out the distinction between that case and the Cave case, and the Robinson case, supra, and held there was no waiver, no general appearance.

The terms of Section 4896 support the conclusion; it says that no election shall be contested unless notice of such contest be given to the opposite party, and "*the notice shall specify the grounds upon which the contestant intends to rely.*" Plainly, therefore, unless the notice specifies the grounds upon which the contestant intends to rely, it is not a legal notice, and is, therefore, insufficient to bring the contestee into court. The contestee does not waive a lack of service by alleging want of such grounds in his motion to dismiss for want of jurisdiction.

The respondent cites a number of cases holding that the lack of service of notice may be waived by the contestee. One of them is the case of State ex rel. Newell v. Cave, just mentioned.

In State ex rel. v. Oliver, 163 Mo. 679, the contestee appeared and filed a motion requiring the contestee to give security for costs, and moved that the notice of contest be made more definite and certain. That was held to be a general appearance and waiver of the lack of service of notice.

In State ex rel. Hancock v. Spencer, 164 Mo. 48, l. c. 54, the contestee appeared and filed an answer, and cross charges, and thus waived the failure to give the notice.

In State ex rel. v. McElhinney, 199 Mo. 67, the contestee (l. c. 80) appeared in the circuit court, filed an answer to the merits of the case, which was in part a cross-complaint against the contestant. He thereby waived the failure to give notice.

So, of all the other cases in which it has been held that failure to give notice is waived, it is where the contestee in some manner entered a general appearance. There is no case where appearing for the purpose only, and filing a motion to dismiss or quash on account of the insufficiency of the notice, is held to be waiver. The case of State ex rel. Bulger v. Southern, supra, is directly in point for the purpose.

We conclude that contestee, by the specification in the motion, set out above did not enter a general appearance, so as to waive a lack of service, if there was no service.

II.   The petitioner claims that there was no proper service of notice of the contest.

The stipulation filed in this court states that in the election the contestant and contestee were candidates for prosecuting attorney at the general election held November 4, 1924; that the final count of votes was made November 8, 1924; that the contestant began his contest by filing with the circuit clerk a notice, November 24, 1924, in the office of the clerk of the circuit court.

<span style="float:left">Service of<br>Notice:<br>Return.</span>

The sheriff made his return of service on the notice as follows:

"Exhibit 'B.'
"Sheriff's Return.

"Executing the within writ within the County of Christian and State of Missouri, on the twenty-first (21) day of November, A. D. 1924 by making a diligent search and failing to find Omer E. Brown, contestee or any member of his family over the age of fifteen years at his usual place of abode in Christian County, Missouri, and by posting a copy of this writ in the office

State ex rel. Brown v. Stewart.

of Circuit Clerk of Christian County, Missouri, being the clerk of the said court wherein this cause is to be tried.

"Said notice being duly posted in the office of the clerk as aforesaid on this the twenty-first (21) day of November A. D. 1924, in the presence of the contestant G. Purd Hays.

"E. M. BISHOP,
"Sheriff of Christian County, Missouri."

Later the sheriff made an additional return, as follows:

"Exhibit 'C'
"Additional Returns.

"I hereby certify that on the morning of November 27, I received at nine A. M. from G. Purd Hays, papers which purported to be a copy of notice and petition in G. Purd Hays v. Omer E. Brown. I did not read them. At eleven A. M. I visited the residence of Omer E. Brown and failed to find Omer E. Brown or any member of his family over the age of fifteen (15) years. On November 28, I visited the residence of Omer E. Brown at 3:20 P. M. and again at 6:40 P. M. and failed to find Omer E. Brown or any member of his family over the age of fifteen years. I had no papers in regard to this cause of any kind whatsoever in my possession from the time the first notice was posted until nine A. M. November 27, 1924.

"(Signed by) E. M. BISHOP.
"Sheriff of Christian County."

The respondent, after a preliminary rule in prohibition had been granted in this case, filed a motion in this court asking leave to compel the sheriff to amend his return to conform to the facts. The circuit court then took evidence regarding the service of the notice, and on February 19, 1925, the court made this order:

"Now, at this day, it is ordered by the court that the former sheriff of Christian County, Missouri, E. M. Bishop, file an amended return in the above entitled cause to conform with the facts as found by the court, as follows, to-wit:

"The court finds from the testimony taken in this action that the return of the sheriff, in order to conform with the facts should be in the following form:

" 'Executed the within writ in the County of Christian and State of Missouri on the 21st day of November, 1924, by making a diligent search and failing to find Omer E. Brown, contestee, in my said county or any member of his family over the age of fifteen years at his usual place of abode in Christian County, Missouri, and I further certify that I posted a copy of this notice in the office of the Clerk of the Circuit Court of Christian County, Missouri, being the clerk of said court wherein this

State ex rel. Brown v. Stewart.

cause is to be tried, said notice being posted in the office of
the clerk aforesaid on the 21st day of November A. D. 1924,
in the presence and with the assistance of G. Purd Hays, con-
testant. I further certify that on the morning of November 27,
1924, I received at nine A. M., from G. Purd Hays a copy of the
notice and petition in the cause of G. Purd Hays against Omer
E. Brown, and at eleven A. M. I visited the usual place of abode
in Christian County, Missouri, of Omer E. Brown, and failed
to find the said Omer E. Brown in my said county or any mem-
ber of his family over the age of fifteen years at his usual place
of abode in Christian County, Missouri. That on November 28,
1924, I visited the usual place of abode of Omer E. Brown in
Christian County, Missouri, at 3:20 P. M., and 6:40 P. M., and
failed to find said Omer E. Brown in my said county or any
member of his family over the age of fifteen years at his usual
place of abode in Christian County, Missouri. That from the
21st day of November, 1924, until the 27th day of November,
1924, I had no copy of the notice in my possession, or any other
papers in said suit, to serve on the said Omer E. Brown, but
between said dates I made search for the said Omer E. Brown
by passing his residence and looking for him and making in-
quiry and failed to find him in my said county and that on the
said 27th and 28th days of November, 1924, I made diligent
search for the said Omer E. Brown, and failed to find him in
my said county and failed to find any member of his family over
the age of fifteen years at the usual place of abode of the said
Omer E. Brown, in my said county. And I further certify that
I saw said notice that had been posted in the office of the Clerk
of the Circuit Court of Christian County, Missouri, still posted
at its usual place in said office after the 28th day of November,
1924, and that so far as I could determine it was in the same
condition that it was in when posted.'

" 'And now the above findings on the amended return
by the court are submitted to E. M. Bishop, former Sher-
iff of Christian County, Missouri, and the said E. M.
Bishop after having examined said findings and having
fully understood same now here in open court refuses to
sign same as his amended return in the above cause.''

It will be noticed that the first return of the sheriff,
"Exhibit B," the additional return (Exhibit C), and the
second additional return, ordered by the court, all state
that the notice was delivered to the sheriff and posted up
in the office of the Clerk of the Circuit Court, November
21, directly contrary to the stipulation signed by the
parties in this court, which says it was delivered and
posted November 24, 1924.

The sheriff refused to sign the return which the court
prepared and ordered him to sign. Thereupon it was

ordered as and of record for the sheriff's return as he should have made it. The differences between the additional return, Exhibit C, signed by the sheriff and the return ordered by the court, are these:

The latter says that the sheriff "failed to find Omer Brown in my said county," November 28, 1924;

"That between the dates November 21, and November 27, 1924, the sheriff made search for the said Omer Brown by passing his residence and by looking for him and by making inquiry for him, and failed to find him in said county;

"That on the 27th and 28th of November the sheriff made diligent search for said Omer Brown and failed to find him in said county;" and

"That he saw the said notice which had been posted in the office of said clerk was still posted after the 28th of November, 1924."

The evidence taken by the court which it is claimed justifies his order to compel the sheriff to amend his return consists of the testimony of Mr. E. M. Bishop, the sheriff himself, and that of several other witnesses. The other witnesses testified to the contents of the notice which was posted up in the circuit clerk's office, and to the length of time it stayed there. This evidence was sufficient to justify a finding that the notice in due form was delivered to the sheriff, and November 21st was posted up in the clerk's office, and remained there posted after the expiration of twenty days from the time the vote was counted.

The testimony regarding the point of difference mentioned above in the additional return made voluntarily by the sheriff, and the additional return ordered by the court which the sheriff refused to sign, is as follows:

Bishop swore that when the first notice was handed him by Mr. Hayes, November 21st, he went over to Mr. Brown's residence, failed to find him in, came back and reported to Mr. Hayes, the contestant, who said it was all right, and he thereupon posted up the notice in the

clerk's office. The sheriff did nothing further in attempting service until November 27, when Mr. Hayes again asked him if he would see if he could find Mr. Brown, and he replied that he had no papers. Mr. Hayes then handed him some papers out of the window. The sheriff went to Brown's residence in the forenoon of that day and failed to find Brown at home; he went the next day, November 28th, at 3:20 P. M. and again at 6:40 P. M., and failed to find Mr. Brown or any member of the family at home. He stated that he made a thorough search of the premises, and he was asked this question:

"Q. I will ask you, Mr. Bishop, if in attempting to serve those papers on Mr. Brown you used the same diligence you did in serving other papers as the sheriff? "A. Yes sir, absolutely. I went further with them than with other papers I had to serve while sheriff of this county. . . . I went into the house, and that is something I never did do in trying to serve a summons."

Further, in answer to questions, the sheriff said that he had made inquiry as to the whereabouts of Mr. Brown. On his first visit he asked a neighbor, Mrs. Kissock, who told him that Mr. Brown had been gone since Tuesday. If this was the 21st, then it was Friday, and the previous Tuesday was November 18th. If it was the 24th, it was on Monday, and the previous Tuesday was the 18th.

Further inquiry by the sheriff got him the information that Mr. Brown, on the 21st or thereabouts, was in Greenfield, attending court. And later, was absent, probably in Taney County, on account of some death in his family. There is an intimation in the contestant's brief that the contestee remained out of the county to avoid service. There is no evidence whatever of that. Mr. Bishop was asked if from November 21 to 27 he made any search for Brown. He said: "No, I didn't have anything to make it with." He was asked if, in addition to inquiring of certain persons, he made any effort to locate Mr. Brown in Christian County. He answered, "No sir."; that he might have asked Mr. Boyd who said Mr. Brown,

313 Mo. Sup.—2.

the day before, was in Greenfield in court. Then these questions and answers appear:

"Q. And the three trips to the Omer Brown residence? Outside of that did you make any effort to find him or locate him? A. I did not.

"Q. You are positive of that? A. No. Of course I might have asked somebody else, but I can't recollect it.

"Q. You didn't know whether he was in Christian County or not? A. I do not."

This denial of effort to find Brown was repeated in varying forms time and again. The sheriff then said that between the 21st and 27th of November, he had no papers to serve. He was asked if he was looking for Brown in those days and he said, "No sir."

He was asked if, on the 28th, he made any effort to locate Mr. Brown in Christian County, except to make two visits to his home? He answered, "That is all." He said: "I was not asked to make any further search. I did not know where he was."

He repeatedly said that the only effort he made to find Mr. Brown was to visit his home, as stated, and those visits were made following Mr. Hayes's instructions. He made his first return at the direction of Mr. Hayes.

He was asked if he did not pass Mr. Brown's house every day from the time he first got the papers until November 28th. He said he passed there every day in order to attend to some stock he had. That he didn't pass there or go there for the purpose of finding Brown, and made no effort to find him, because he had no papers to serve upon him. He then said in relation to the returns he had voluntarily made: "I could not remedy the arrangement a particle and tell the truth." He repeated that while he had the papers on the three days, the 21st, 27th and 28th, he looked nowhere in the county except Brown's residence.

The returns which the sheriff voluntarily made and the return which the court ordered him to make say the notice was posted in the clerk's office November 21st. We conclude, therefore, that the date in the stipulation which

gave such proceeding as of November 24th, is a clerical error. It not only contradicts the returns, but contradicts the facts sworn to by the sheriff and by the contestant himself. That difference, however, would not affect the result if the date in the stipulation was correct.

A sheriff's return of service of process is conclusive on the parties and can be contradicted only in an action for making a false return. [Barnett v. Barnett, 207 Mo. App. 1. c. 686; Smoot v. Judd, 184 Mo. 508; Newcomb v. Railroad, 182 Mo. 687.] The court, in the exercise of sound discretion, may compel the sheriff to amend his return to conform to the facts. [Hopkins v. Henson, 205 Mo. App. 1. c. 389; Feurt v. Caster, 174 Mo. 289, 1. c. 297 and 299.] In the case last cited the matter is considered at length, and this court said on the page last mentioned, in relation to the power of the trial court to compel an amendment: "And whilst this court is always loath to interfere with discretionary rulings of trial courts, nevertheless such rulings are not conclusive upon this count, and where they are interfered with it is because that discretion exercised by the trial judge is not a personal discretion, but a judicial discretion, and because the ultimate responsibility for every judgment rests upon the court of final resort to which the case is taken, and therefore that court is in duty bound to approve or reject all rulings of lower courts when made in the exercise of a judicial discretion." That was said in relation to the court's action in causing a sheriff's return to be amended.

From these authorities we conclude that while the trial court had discretion to cause the sheriff to amend his return, that discretion did not authorize him to require an amendment contrary to the facts. The amendment ordered by the court says that the sheriff failed to find Omer Brown "in my said county" on the days on which the sheriff had the papers in his hands. The sheriff himself said he made no attempt to serve such papers and made no search except at the residence of the contestee. The return ordered by the court says that between the

date November 21st and November 27th he made search for Omer Brown. That is directly contrary to the sheriff's sworn statement that he made no effort whatever during those days to obtain service because he had no papers in his hands to serve. For the reasons that these statements were thought by the sheriff to be contrary to the facts he refused to sign the return prepared for him.

We think, from the evidence the trial court had before it, that those statements of the fact were not justified, and the court was acting beyond its discretion in ordering the sheriff to incorporate them in his return. It is apparent from this evidence that the contestee probably was in the county from the time the vote was counted, November 8th, until the 18th, when his neighbor said he left home. He was not at his home on the 21st, 27th, 28th. There was no evidence from which it could be said that he could not be found *in the county* on those dates, or at any of the dates between the 21st and the 27th. The time for personal service expired on the 28th.

III. We next inquire whether from these facts there was proper service. Section 4896, Revised Statutes 1919, provides that in an election contest notice shall be given to the opposite party within twenty days after the vote shall have been counted, "by delivering copy thereof to the contestee, or by leaving such copy at his usual place of abode, with some member of the family over the age of fifteen years; or, if neither such contestee nor his family *can be found in the county, and service cannot therefore be had as aforesaid,* it shall be a sufficient service of such notice for the contestant to post up a copy thereof in the office of the clerk of the court wherein the contest is to be heard."

Statutes providing for service of process by publication being in derogation of common law must be strictly followed. [32 Cyc. 483; Flynn v. Tate, 286 Mo. l. c. 464; Stanton v. Thompson, 234 Mo. l. c. 11.] In the case last cited, LAMM, J., expressed the doctrine thus (l. c. 11):

"And, second, that service of process by newspaper publication is allowed as of necessity. It is due process of law more in form than in substance. However convenient, it is a harsh and highly technical substitute for service of process; therefore, is *strictissimi juris*, and (being of rigid right) a party invoking it is entitled to cold law no less, no more."

That service by posting in the clerk's office is service by publication and is governed by the same principles as a newspaper publication, is not disputed.

A return of *non est* prematurely made before the return day does not authorize publication, and publication in such case however regular, would not be effective. [Williams v. Sands, 251 Mo. l. c. 162, and cases cited.] In that case the statute authorized service by publication on a return by the sheriff of *non est inventus*. The return was made within a week after its issuance and before the return day. It was held that the publication issued on it was ineffectual. The statute here requires the notice to be posted only in case personal service cannot be had. The sheriff's original return recites that November 21st (which was thirteen days after the vote was officially counted), he made a diligent search and failed to find Omer E. Brown, contestee, or any member of his family over the age of fifteen years at his place of abode and he posted a copy of the notice in the office of the clerk of the circuit court. That return does not show that he made any effort to find Brown anywhere else than at his residence on that day. But his testimony shows he made an inquiry of a neighbor, and others, and found on that day Brown was attending court in Dade County. The court, therefore, was justified in ordering the return to show that he made diligent search November 21st, and failed to find Omer E. Brown in his county. That, however, did not authorize a posting of the notice, because it was seven days before the expiration of the time when he was authorized to make a return to the effect that he was unable to find the contestee in his county. It is conceded by the

respondent that the posting of the notice at that time did not constitute service to bring it within the requirements of the statute and of the rule of law above mentioned, and that must be true, no matter how long the notice stayed there.

If the posted notice at that time did not constitute service, when did it become effective service? Although it remained posted until after the end of twenty days, what act of the sheriff subsequent to the time could possibly give that notice retroactive effect? It seems to be contended by the contestant that when another copy of the notice was delivered to the sheriff at a subsequent date, which he attempted to serve and failed, that failure made valid and effective the otherwise invalid and ineffective publication.

We need not inquire if the sheriff had received a notice later than the 21st, and before the expiration of the time, and by using due diligence failed to obtain service on the contestee or a member of his family, whether he might at the expiration of the twenty days have posted a legal notice authorized by his inability to serve. That question does not arise here. Nor does the question arise whether by sufficient subsequent attempt at service, the sheriff was capable of ratifying a previously posted illegal notice. Before a notice can be posted the *law requires that the sheriff shall be unable to find the defendant in his county after he obtains possession of the notice which he is to serve.*

He received the notice November 21st. Between that day and the 27th he had no papers in his hands, and no notice upon which to make service. The finding by the respondent that during that time the sheriff made search for Brown was not warranted, because the sheriff swore positively that he never did anything after that first visit to the contestee's house on November 21st. He said, ''I thought that ended the case. I never done anything until about the 27th.'' On the 27th he visited the house of Mr. Brown once, and on the 28th he visited the house twice.

During those two days and during the time between the 21st and the 27th, the sheriff never went anywhere in the county nor looked anywhere in the county, excepting the three visits mentioned to the residence. In his testimony he said that he used more diligence than usual in attempting to serve the notice. He explained that extraordinary effort by saying that he went into the house, which usually he did not do on his visits. He passed the place to attend to his stock, but had no papers to serve and did not look for contestee or any member of his family. Further in his testimony the sheriff said that the papers which were handed to him on the 27th, he did not post up and he made no return on them.

He explained at length his attempt to find the defendant on the 21st. That is the time he went into the house, went around the house and into the garage, and made inquiries, and found that the contestee was away. He did not go to the house between the 21st and 27th. He said, "I didn't have any papers; I thought the thing was over." He repeated those statements a number of times. He further stated that all he did was at the direction of the contestant.

Some of the decisions setting out the facts where constructive service is required throw light on the attitude of the court in matters like this. The case of Tooker v. Leake, 146 Mo. 419, is where a title pursuant to a sale under execution in a tax suit was in question; a summons was issued and a *non est* return was made (l. c. 424). There was no allegation or affidavit filed with the petition, authorizing publication under the statute. The court could order publication only on a *non est* return. The order of publication which followed, recited: "It appearing to the satisfaction of the court that the above-named defendants . . . are non-residents of the State, so that ordinary process of law cannot be served upon them," it was ordered that publication be had. The court pointed out that there were two statutes relating to the matter. Section 2022, Revised Statutes 1889, providing that if the

plaintiff should allege in his petition or file an affidavit that the defendants were non-residents of the State, or had absconded or concealed themselves so that the ordinary process of law could not be served, the court should make an order of publication. Section 2024 of the same Revision provided that when summons should be issued and the sheriff should make a return that the defendant could not be found the court, being first satisfied that process could not be served, should make an order. It was held that the publication was not authorized and there was no service, because the order did not show that it was based on the *non est* return so as to show that the defendant could not be found. That the recital in the order that the ordinary process of law could not be served upon them was not sufficient to bring it within that statute. When the order was made it may have been true that service could not be had, but the order based on a return must be made *after* the sheriff has used diligence and failed to find the defendant in the county.

In the additional return here made voluntarily by the sheriff he does not say that he used due diligence and failed to find Omer Brown in the county at any period; he said that all he did was to go to the residence of the defendant, once on the 27th and twice on the 28th of November, and failed to find the contestee or any member of his family. Neither his return nor the facts show that he made any effort to find the defendant during the period from the 21st to the 27th. The return dictated by the court fails to show that any effort was made to find a member of his family at his residence during those days. The facts show that he made no effort to find anyone.

The case of Tooker v. Leake, is a leading case, and cited often in later cases.

In State ex rel. Bulger v. Southern, 278 Mo. 1. c. 618, the official count was completed November 11th. After failure of personal service the notice was posted November 30th, that being Saturday. It was claimed that Sunday, being the twentieth day, should be excluded. The

court held that the notice could not properly be posted until Monday, the second of December, and therefore the notice posted the Saturday before was ineffectual to confer jurisdiction of the person, because, although the notice was posted on the 30th at two P. M., *"no effort to secure* personal service was made after that time." Although the sheriff may have held the paper in his hands until after the expiration of the time, that would not give validity to the notice prematurely posted. In that case the failure of the sheriff to use diligence *during the last two days of the life of the writ,* rendered invalid the posted notice. In this case the sheriff, during six days next prior to the last two days, within the life of the notice, failed to use any diligence to get personal service. Therefore, *no* publication was authorized, and especially the prematurely posted notice was not made valid.

To authorize publication or a posted notice, the sheriff must retain the writ and use diligence to serve it *during its life.* So the authorities hold.

This court said in case of Cummings v. Brown, 181 Mo. l. c. 716: "The officer may execute the writ as soon as it is placed in his hands, but he has no right to return it unexecuted until the return day. *From the time it comes into his hands to the day named in the writ it is his duty to use due diligence to serve it;* a return not executed before the return day is an illegal return."

In Lumber Company v. McCabe, 220 Mo. 154, this court dealt with service by publication, where the service was held bad on account of premature return, and said (l. c. 168): "Directing our attention to the summons and return by the sheriff, manifestly it was the duty of the sheriff to *retain such summons until the return day* as designated in the writ, to the end that *if at any time during the life of the writ the defendant was found he could have been served.*" In the same opinion also the court said: "Manifestly the law contemplates that if personal service is sought by the issuance of a writ of summons, made returnable on the first day of the next regular term

of court, that the sheriff, *during the life of the writ,* will, with reasonable diligence, undertake to secure such personal service. However, if the writ is prematurely returned indorsing his execution of the writ long before the return day that he has been unable after diligent search to find defendant, it does not necessarily follow that the defendant could not be found subsequent to his return and before the expiration of the life of such writ.'' And further (1. c. 170): ''In the case of Horton v. Monroe, 98 Mich. 195, it was ruled that while the statute, which is similar to the provisions of our statute, did not contemplate a search in the sense that the sheriff must make a tour of the entire county to find the defendant, but it was expressly held in that case that the sheriff should, by his return, show that *he had been unable to find the defendant within the life of the writ.*''

In this case the notice was prematurely posted on the first return of failure to find. There was no posting of notice pursuant to a subsequent return. The sheriff did nothing with the papers which were handed him on the 27th, except to hand them back. He made no return on them and posted no notice in pursuance of them. If the sheriff had held in his hands the notice which was handed him on the 21st of November, and used reasonable diligence during the entire period until the 28th of November to obtain personal service, possibly it would not have been necessary for him to take down the notice which he had posted and report it, because a return showing due diligence during the life of the writ, and his recognition of the notice as posted in pursuance of that return might make a valid service. But with that question we are not concerned. He did not keep the notice in his possession. During six days in the life of the notice he was unable to obtain service if the defendant had been found. He made no effort to do it and had no notice in his hands. This at the direction of the contestant, both of them believing that the service had been sufficient. When the contestant awoke to the situation two days before the expiration of

the time he didn't attempt to obtain in a legal way another service, and now claims that his attempt, such as it was, gave validity to the invalid service which he had achieved before.

Under the authorities and the facts in this case the respondent was without jurisdiction to proceed with the election contest, and the preliminary rule in prohibition is therefore made absolute. All concur.